IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | | |
|---|---|---|
| ROY McINTYRE, | ) | Cause No. CV 06-83-BU-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

_____

On November 9, 2006, Petitioner Roy McIntyre moved to proceed in forma pauperis with this action for writ of habeas corpus under 28 U.S.C. § 2254.  The motion was granted in a separate Order.  Petitioner is a state prisoner proceeding pro se.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 2241, and 2254.

On June 4, 2007, Petitioner was ordered to show cause why the first four claims in his petition should not be dismissed as time-barred, as procedurally defaulted, or both.  See Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).  He responded on June 19, 2007.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

**I. Background**

Petitioner pled guilty in Montana's Second Judicial District Court, Butte-Silver Bow County, to sexual intercourse without consent and two counts of sexual assault. On April 29, 2003, he was sentenced to a serve thirty-year prison term, with 22 years suspended. He did not appeal and he did not file a petition for postconviction relief. See Pet. (doc. 1) at 3-4, ¶¶ 1-12.

On September 30, 2005, the Board of Pardons and Parole ("the Parole Board") denied Petitioner's application for parole and required that he complete Phase II of the sex offender treatment program at Montana State Prison before he would be considered again for parole. See Order at 2, McIntyre, No. OP 06-0582 (Mont. Sept. 27, 2006); Br. in Supp. of Pet. ("Br.") at 11.

On or about August 14, 2006, see Br. at 2, Petitioner filed a petition for writ of habeas corpus in the Montana Supreme Court. On September 27, 2006, the Montana Supreme Court denied the petition. Four of Petitioner's claims were dismissed on the grounds that the writ of habeas corpus is not available under Montana law to challenge a conviction or sentence. One of his claims, regarding parole, was denied on the merits. See Order at 2-3, McIntyre v. Mahoney, No. OP 06-0582 (Mont. Sept. 27, 2006) (attached to petition).

Petitioner filed his petition in this Court on November 9, 2006.

**II. Allegations of the Petition**

Petitioner alleges, first, that he was deprived of his right to due process when he was prosecuted by Information, rather than being given the opportunity to challenge probable cause in a preliminary examination. See Pet. at 4, ¶ 15A(1); Br. at 3-6.

Second, he asserts that he was denied his Sixth Amendment[1] right to a speedy trial when he was held in custody for over a year between his arrest and his guilty plea. He also claims that his attorney, Brad Belke, did not have his consent to waive his right to a speedy trial. See Pet. at 5, ¶ 15B(1); Br. at 6-7.

Third, Petitioner contends that Mr. Belke and the prosecutor, Sam Cox, preyed upon his grief and depression over the death of his wife to coerce him into signing a plea agreement. He also avers that the plea agreement did not require any prison time, but Mr. Cox argued at sentencing for a prison term, in breach of the agreement. See Pet. at 6, ¶ 15C(1); Br. at 7-9.

Fourth, Petitioner avers that his counsel was ineffective because he colluded with the prosecution, coerced his client into pleading guilty, failed to present mitigating evidence at sentencing, and failed to provide any representation at all in appellate or postconviction proceedings. See Pet. at 6-7, ¶ 15D(1); Br. at 9-11.

Finally, Petitioner alleges that the Parole Board imposed "an unlawful obstruction to his right to parole eligibility" when it required him to complete Phase II of a sex offender treatment program as a precondition to parole. Petitioner asserts that the Phase II program requires him to confess to "a crime" of which he has "routinely maintained his innocence," Br. at 12, though he does not say what crime that is. Petitioner also contends that the Montana Supreme Court's decisions allowing the Parole Board to impose conditions on persons applying for parole are contradicted by its decisions restricting the Board's authority to impose conditions on probationers. See Pet. at 7, ¶ 15E(1); Br. at 11-15.

---

[1] Petitioner mistakenly cites the Fifth Amendment.

### III. Analysis

Petitioner's first four claims for relief relate to his conviction. Only the last claim for relief relates to parole.

**A. Statute of Limitations**

The federal statute of limitations bars consideration of the merits of the first four claims of Petitioner's petition.

### 1. Untimeliness of the Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to petitions filed under 28 U.S.C. § 2254. In this case, as to Petitioner's first four claims, the limitations period began to run on the date Petitioner's conviction became "final" in state court. Id. § 2244(d)(1)(A).

Under state law, Petitioner had sixty days to file a notice of appeal from the trial court's imposition of sentence on April 29, 2003. See Mont. R. App. P. 5(b). Since he did not do so, his conviction became "final," for purposes of 28 U.S.C. § 2244(d)(1)(A), sixty days after the entry of judgment, on June 29, 2003. Therefore, any federal petition containing Petitioner's first four claims had to be filed in this Court on or before June 29, 2004. He filed more than two years too late, on November 8, 2006.[2]

### 2. Statutory Tolling

The one-year period for filing in federal court for a writ of habeas corpus is tolled by statute

---

[2] The Court received the motion on November 9, 2007. See Pet. (doc. 1) at 1. However, a prisoner petition is deemed filed at the time it is delivered to prison authorities for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988). In the absence of any other evidence on the point, the Court will assume that that date was November 8, 2006, the date on which Petitioner signed the petition. See Pet. at 9.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

while a petitioner has an action pending in state court. See 28 U.S.C. § 2244(d)(2). However, Petitioner states that he filed his habeas petition in the Montana Supreme Court on or about August 14, 2006. Therefore, the federal statute of limitations expired more than two years before any time was tolled under § 2244(d)(2). Moreover, Petitioner waited forty more days after the Montana Supreme Court denied his state petition before he filed his federal petition. Statutory tolling does not apply to Petitioner's first four claims.

### 3. Equitable Tolling

Petitioner might be entitled to equitable tolling if he demonstrates that extraordinary circumstances beyond his control made it impossible for him to file his federal petition on or before June 29, 2004. See Calderon v. United States Dist. Court ("Beeler"), 128 F.3d 1283, 1288-89 (9th Cir. 1997) (internal quotation omitted), overruled on other grounds by Calderon v. United States Dist. Court ("Kelly IV"), 163 F.3d 530 (9th Cir. 1998) (en banc). Equitable tolling "will not be available in most cases" and poses a "high hurdle" for a petitioner to overcome. Id. Petitioner has the burden of proving that he is entitled to equitable tolling. See, e.g., Smith v. Duncan, 274 F.3d 1245, 1250 (9th Cir. 2001) (citing Hinton v. Pacific Enters., 5 F.3d 391, 395 (9th Cir. 1993), and Herbst, 260 F.3d at 1041-42).

Petitioner fails to demonstrate any basis for equitable tolling.

### 4. Constitutionality of AEDPA

Petitioner's only response to the Court's Order to Show Cause regarding the one-year federal statute of limitations is a portion of a petition for writ of certiorari signed by someone whose signature is blacked out. See Pet'r Resp. (doc. 9) at 6. The petition for certiorari is aimed at the

requirement that a habeas petitioner obtain a certificate of appealability from either the district court or the court of appeals. That, of course, is not, or at least not yet, an issue in this case. With very liberal construction indeed, it appears that Petitioner intends to argue that the limitations period amounts to an unconstitutional suspension of the writ. See id. at 3-5. The Ninth Circuit has held that it does not. See Green v. White, 223 F.3d 1001, 1003-04 (9th Cir. 2000).

### 5. Dismissal

Because Petitioner's first four claims were not timely filed, because there is no basis for statutory or equitable tolling of the limitations period, and because the limitations period is constitutionally valid, the first four claims of the petition are time-barred and should be dismissed with prejudice.

### B. Procedural Bar

Again, except as to Petitioner's fifth claim, regarding parole, his petition is also procedurally barred from consideration in this Court.

### 1. Procedural Default and Procedural Bar

The issue of procedural default may be raised in a court's preliminary screening "when the default is obvious from the face of the petition and when recognizing the default would 'further the interests of comity, federalism, and judicial efficiency.'" Vang v. State of Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003) (quoting Boyd v. Thompson, 147 F.3d 1124, 1128 (9th Cir. 1998)).

Here, procedural default is clear on the face of the petition. Petitioner states that he did not pursue either an appeal or a postconviction petition in the state courts. See Pet. at 3, ¶ 8; id. at 4, ¶ 11. Consequently, his first four claims for relief were not presented to the trial court, and they were

not presented to the Montana Supreme Court in a procedural posture that enabled that court to take them up. A petition for post-conviction relief is no longer available to Petitioner because the one-year state statute of limitations expired nearly three years ago. See Mont. Code Ann. § 46-21-102(1) (2003). Additionally, Petitioner's claim relating to the prosecutor's violation of the plea agreement could have been raised on direct appeal. Mont. Code Ann. § 46-21-105(2) bars him from raising such a claim in a postconviction proceeding. The writ of habeas corpus is not available under state law to challenge a conviction or sentence. See Mont. Code Ann. § 46-22-101. Therefore, Petitioner's first four claims were procedurally defaulted in state court. See also Order at 2, McIntyre, No. OP 06-0582 (Mont. Sept. 27, 2006) (holding that the first four claims "are not cognizable in habeas").

Under most circumstances, claims that are procedurally defaulted in state court also cannot be raised in federal court. Violation of the state's procedural rules is generally an adequate and independent ground for the state court's decision denying relief. See Harris v. Reed, 489 U.S. 255, 263 (1989). In such cases, a petitioner is said to have procedurally defaulted on his claims for relief, and his case is procedurally barred in federal court.[3]

### 2. Excusing Procedural Default

However, there are exceptions to the general rule of dismissal for procedural default. Once

---

[3] The Montana Supreme Court has consistently applied Mont. Code Ann. § 46-21-105(2), without considering federal procedural or substantive law, to bar review of issues that could have been raised on direct appeal. See, e.g., Watson v. State, 61 P.3d 759, 761 ¶¶ 10-11 (Mont. 2002) (considering whether claim could have been decided on direct appeal and so was procedurally barred). It has also consistently applied Mont. Code Ann. § 46-22-101(2) to preclude habeas relief against a conviction or sentence. The sole exception to the statutory bar arises when a petitioner asserts that his sentence is "facially invalid." See Lott v. State, 150 P.3d 337, 342 ¶ 22 (Mont. 2006). None of Petitioner's procedurally defaulted claims can be decided by looking only at the Judgment and state statutory law. Therefore, Lott does not apply.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

a procedural default is found to exist, then:

> federal habeas review of the claims is barred *unless* the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added). Accordingly, this Court could review Petitioner's claims if he could EITHER show (1) cause, and (2) prejudice; OR show that this Court's failure to consider his claims would result in a fundamental miscarriage of justice. He has not attempted to make either showing. His procedural default is unexcused.

### 3. Constitutionality of the Doctrine of Procedural Bar

Again, with extremely liberal construction, it appears that Petitioner intends to argue that the doctrine of procedural default amounts to an unconstitutional suspension of the writ. The argument is misdirected against the doctrine of procedural bar. While exhaustion is required by statute, see 28 U.S.C. § 2254(b), both the doctrine of exhaustion and the doctrine of procedural bar originate in common law, not statutory law. Thus, they are not affected by the Constitution's prohibition against suspension of the writ by Congress, see U.S. Const. Art. I, § 9, cl. 2, and they predate AEDPA, see, e.g., Harris v. Reed, 489 U.S. 255, 263 (1989); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). Finally, despite procedural default, relief may be available in the extraordinary case. See, e.g., Schlup v. Delo, 513 U.S. 298, 320-21 (1995); Murray v. Carrier, 477 U.S. 478, 496-98 (1986). That is why Petitioner was given an opportunity to show an excuse for his procedural default in state court. The doctrine of procedural bar is not unconstitutional.

### 4. Dismissal

Petitioner fails to show either cause and prejudice or a fundamental miscarriage of justice to

excuse his procedural default of his first four claims in state court.  They should be dismissed with prejudice as procedurally barred.  See Harris, 489 U.S. at 263.

### C. Parole Claim

Petitioner's last claim, regarding denial of his parole, appears to be timely.[4]  On the merits, however, Petitioner is not entitled to relief.

### 1. Fifth Amendment Claim re: Compulsory Self-Incrimination

Although Petitioner contends that Phase II of the sex offender treatment program requires him to confess to "a crime" of which he has "routinely maintained his innocence," Br. at 12, he pled guilty to two counts of sexual assault and one count of sexual intercourse without consent, see Pet. at 3, ¶¶ 3, 5.  The Montana Supreme Court noted this fact and gave Petitioner's claim of compulsory self-incrimination no more consideration.

If Petitioner is being required to confess to "a crime" with which he has never been charged, the Court has little doubt that he would have said so.  Instead, he does not mention the "confession claim" in his Petition, see Pet. at 7, ¶ 15E, but only in his supporting brief.  Moreover, in his supporting brief, he states that the Board may not compel him "to attest against himself . . . *even as to the issue for which he was convicted*."  Id. (emphasis added).  Thus, the Court concludes that Petitioner is asserting that he may not be compelled to incriminate himself, even though he did so

---

[4] The limitations period began to run on the first day following the Parole Board's decision.  The Montana Supreme Court's decision states that the Parole Board imposed the condition Petitioner challenges on September 30, 2005.  See Order at 2, McIntyre, No. OP 06-0582 (Mont. Sept. 27, 2006).  Because no appeal lies from a decision of the Parole Board, any federal petition containing the parole claim had to be filed in this Court on or before October 1, 2006.  However, time is tolled while a "properly filed application for State post-conviction or other collateral review" is pending in state court.  As to the parole claim, statutory tolling began when Petitioner filed his state habeas petition, "[o]n or about August 14, 2006."  Br. in Supp. of Pet. (doc. 2) at 2.  The Montana Supreme Court issued its decision on September 27, 2006.  Petitioner signed his federal petition on November 8, 2006.  The parole claim is timely.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

when he pled guilty.[5]

The Fifth Amendment, as applied to the States through the Fourteenth Amendment, see Malloy v. Hogan, 378 U.S. 1, 6 (1964), has two components, incrimination and compulsion. See United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005). Thus, to show that the sex offender treatment program amounts to a Fifth Amendment violation, Petitioner must show both that the admission required by the program carries the risk of incrimination and that the consequence of refusing to make the admission is so serious as to amount to compulsion. Id.

On the first element, the claim of compulsory self-incrimination fails. Since Petitioner has already been convicted of the crime for which is required to accept responsibility, there is no incriminatory element in the treatment program. He cannot be prosecuted for, let alone convicted of, the same offense again. See Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) (where threat of incrimination is eliminated, witness may be compelled to answer). There is no Fifth Amendment violation. See also McKune v. Lile, 536 U.S. 24, 42 (2002) (finding no compulsion where prisoner's custody status was enhanced based on failure to participate in sex offender treatment program).

### 2. The Board's Authority to Impose Conditions on Granting of Parole

Petitioner alleges that the Parole Board imposed "an unlawful obstruction to his right to parole eligibility" when it required him to complete Phase II of a sex offender treatment program as a precondition to parole. He also contends that the Montana Supreme Court's decisions allowing the Parole Board to impose conditions on persons applying for parole are contradicted by its decisions restricting the Board's authority to impose conditions on probationers. Pet. at 7, ¶ 15E(1);

---

[5] Petitioner's third claim for relief, which is barred, alleges that his guilty plea was obtained under duress. See Pet. at 6, ¶ 12C.

Br. at 11-15.

Neither argument has merit. First, there is a rational basis for distinguishing between the Board's authority to impose conditions on parolees and its lack of authority to impose conditions on probationers. Probation is imposed at the time of sentencing by a judge, who makes the decision whether to impose probation and, if so, on what conditions. See Mont. Code Ann. § 46-18-201(2), (4)(c) (2003). Parole is a matter of executive grace. It constitutes an early release from a lawfully imposed term of imprisonment. While a sentencing judge may condition parole eligibility on various factors, see id. § 46-18-202(1)(f), (2), the Board makes the ultimate decision whether to grant parole and, if so, under what conditions, see id. §§ 46-23-201(1), -215(1), (2). There is no "contradiction" in the fact that probation and parole are treated differently in Montana Supreme Court decisions. They are different.

Finally, the Board is free to impose whatever preconditions to parole it believes reasonably necessary to ensure that a prisoner's release will not be a "detriment to the prisoner or to the community" and that the prisoner will be "able and willing to fulfill the obligations of a law-abiding citizen." Id. § 46-23-201(1), (5). Its decision to require completion of sex offender treatment by a prisoner convicted of two counts of sexual assault, as Petitioner here was, is wholly unremarkable.

### 3. Denial on the Merits

Petitioner is plainly not entitled to relief on his claim regarding denial of parole. The fifth ground for relief should be denied on the merits.

### D. Conclusion

Petitioner's first four claims are barred by both the federal statute of limitations and the

doctrine of procedural default and bar. They should be dismissed with prejudice. His fifth claim is timely and is not defaulted, but it lacks merit and should be denied.

## IV. Certificate of Appealability

**A. Governing Law**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner ... "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits. The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording petitioners an opportunity to show potential for merit. Lambright, 220 F.3d at 1025. Any doubt as to whether a petitioner has met the standard is resolved in his favor. Id.

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of

the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright, 220 F.3d at 1026 (quoting Slack, 529 U.S. at 484).

The COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a certificate *should* issue. Id.

Finally, under the rule announced in White v. Lambert, 370 F.3d 1002, 1010-11 (9th Cir. 2004), Petitioner is not required to obtain a certificate of appealability as to his fifth claim, because it challenges a decision made by the Montana Board of Pardons and Parole.

**B. Discussion**

Reasonable jurists would not disagree with the Court's determination of either time bar or procedural bar to the first four grounds for relief in the Petition. Petitioner filed more than two years too late. He made no attempt to show that the limitations period should be tolled. Additionally, the Montana Supreme Court specifically refused to rule on the merits of the first four claims because Petitioner presented them in the form of a petition for writ of habeas corpus rather than on direct appeal or in a petition for postconviction relief as state law requires. There is no reason to encourage Petitioner to proceed further.

Again, as to the fifth ground for relief, regarding denial of parole, no certificate of appealability is required. See White, 370 F.3d at 1010-11.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

The first four claims of the Petition should be DISMISSED WITH PREJUDICE based on both the federal statute of limitations and the doctrine of procedural bar. The last claim, regarding denial of parole, should be DENIED on the merits. A certificate of appealability should be DENIED as to the first four claims. Pursuant to White v. Lambert, 370 F.3d 1002, 1010-11 (9th Cir. 2004), no certificate of appealability is required as to Petitioner's claims regarding denial of parole.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

Petitioner must keep the Court informed of his current mailing address while his case remains pending.

DATED this 21st day of November, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14